Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Grant is in Atlanta. And Judge Shoflat is a member of the panel and although he will not be participating in the oral arguments this morning, he will participate in the consideration of the appeals this morning. And we have three appeals that are, or four appeals that are scheduled for oral argument this morning. And counsel, I would advise you that we have read the briefs and we've examined relevant parts of the record that will assist you in narrowing the focus of your arguments with the time that you have available this morning. Ms. Geddes is our timekeeper and she will alert you when your time has expired and she will also give you a two-minute warning. So I believe we're all ready to proceed this morning with the first argument. It's Melanie Garcia v. Wells Fargo Bank and Wachovia Bank. Bruce Rogow is here for the appellate and Sonia is here for appellate Wells Fargo and Wachovia. And Mr. Rogow, are you ready to proceed with your argument? I am your honor. Good morning. This case presents two separate issues for two different banks. The Wells Fargo issue deals with whether or not the arbitration clause in the Wells Fargo Consumer Agreement clearly and unmistakably delegated to the arbitrator the determination of gateway issues. What I will argue in a minute is that it did not. The second bank, Wachovia, does not have a delegation issue. And there the issue on appeal is whether or not the trial court erred in not assessing the agreement, the Wachovia agreement, on a state-by-state analysis to determine whether or not it was unconscionable or it was illusory. So let me go right to the Wells argument. And the clear and unmistakable language is the starting point for any assessment of a delegation clause. The Supreme Court has made clear and this court has made clear that a delegation clause to an arbitrator must be specific in terms of what is delegated to the arbitrator. And the court must be confident that it was a clear and unmistakable delegation. And here we are arguing that the clause in the clauses, there are several clauses in the standard. And I think that perhaps the best way to underscore the fact that it doesn't is to take a look at one of this court's more recent cases, the Jones versus Waffle House case, where it deals with an arbitration clause and whether or not there was a delegation. And if one looks at the arbitration clause in the Jones case. Mr. Rogow, how's the arbitration clause here different than the arbitration clause that was considered in Terminex versus Palmer Ranch? Well, Terminex certainly is the starting point for this assessment. And the first distinction, Judge Wilson, is that that involved not a consumer situation, that involves sophisticated parties in a commercial transaction. And I think that has to be the starting point. Remember, the drafter of this agreement here, Wells, is the party saying that it was sending something to an arbitration. But in Terminex, the judge Shoflat held in Terminex, along with the rest of the panel, that the mere mention of the AAA was sufficient to send it to the AAA. But the important distinction here is this is a consumer case. This is not a commercial transaction case. So when you measure this arbitration clause in the light of the parties to the cause, then you have to come to the conclusion, we submit, that it was not a clear and unmistakable delegation to the AAA. How is that consistent with your earlier and correct point that we interpret arbitration clauses by looking at their words as we would with any other contract? Well, and I think if you look at the words in this situation, the words in the arbitration clause sends the arbitration to commercial dispute resolutions and then some supplementary procedures. So if you look at the words, this is not the kind of clear and unmistakable kind of situation, nor does it specifically say, and that's why I come back to Jones, nor does it say what is being delegated. Jones was very good in terms of what the delegation was, the formation, the interpretation, the applicability of the arbitration clause. And there was a catch-all in the arbitration clause in Jones. It said, including any claim that all or part is void or avoidable. So the point I'm making, I think, Judge Grant, is that when you're looking at a consumer, not a commercial arbitration clause in an agreement, then you must look at it very carefully because this notion of confidence in the delegation. Aren't the delegation provisions identical though? I mean, they both say the objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of the claim or counterclaim. They both have that same delegation provision, don't they? Are you looking at the Wells Fargo arbitration clause? I'm looking at it too. Pardon me? I'm sorry, Judge Wilson. Isn't that in the Wells Fargo arbitration agreement? It talks about a dispute. It includes any dispute relating in any way to your accounts and services and any disagreement about the meaning of this arbitration and whether or not something is a dispute. But unless I'm missing that language that you have pointed out to, there are three or four pages, which I think underscores the fact that this is not such an easy, simple arbitration clause to look at. It's not a single paragraph. It has a page and a half or two pages of various things that are said. But the point is, is that what it does not say is it does not say that it's delegating to the arbitrator a determination of whether or not this is enforceable, whether or not it's illusory, whether or not it's unconscionable. It doesn't say anything like that. And the truth is, too, that it's a permissive arbitration clause. That's an interesting point in this. This arbitration clause has so many words to it, but it doesn't have the magic words. Sometimes a contract, a person who writes a contract, gets themselves into difficulty because they say too many things. And this is a situation where the Wells contract says too many things, too many confusing things, suggesting to a consumer that commercial arbitration dispute resolution standards will apply when clearly it's a consumer. But if I may, I mean, the point, I recognize Terminex, I recognize the language in Terminex, but when I hold this contract against Terminex, consumer versus sophisticated commercial party, Spirit Airlines, where it's the drafter of the contract that said it goes to arbitration, and then the drafter was trying to avoid arbitration, and the court said no. JPAY, the drafter, again. How do we get around our decision in JPAY versus COBOL, where we said the incorporation of any AAA rules serves as clear and unmistakable delegation of questions of arbitrability to an arbitrator? You're absolutely right. That's what JPAY said. Any and all disputes are going to be resolved by the arbitrator. But again, who is the party that is in that situation contesting whether or not it should go to court of the arbitrator? It's the drafter in that situation. And so to hold it against the drafter is easy enough to say it's clear and unmistakable. But to hold this kind of language against the consumer, who is simply trying to determine whether or not his or her account was properly calibrated, is a far different story. And again, you know- Can clear and unmistakable really depend on which party's perspective you're interpreting from? It seems to me that if it's clear and unmistakable, that suggests strongly that it would be clear and unmistakable to anyone. Judge Grant, I think, and this goes to the heart of these arbitration clauses, consumer arbitration clauses, are they essentially one-sided? Yes. We know what the law is after concepcion, the five to four decision that they're applicable. But I think you see this language, and you see in Judge Barkas wrote, we don't presume that there is an agreement to avoid court. And that's why clear and unmistakable language is so important. So I think it does make a difference. I don't think what's clear and unmistakable to a lay person, a person who has $300 in the bank, is not the same thing as what's clear and unmistakable to a sophisticated party in a commercial transaction. And I think that distinction is critical and important here. Do you have a case that makes that distinction either here or at the Supreme Court? Not in the Supreme Court, but we have cited cases from other courts around the country where that distinction is relevant in making the determination. So I think, really, when I look at these cases from Terminex on down, I read them, we read the same things. And is it clear and yes, but it says it in the context of a commercial transaction. And it doesn't have, like this situation, a situation where the arbitration agreement written by the bank talks about referring this to commercial dispute resolution. If you are an account holder, and you have a few dollars in the bank, you don't expect that this is something that you're going to have to endure. I don't want to interrupt you, but are there any arguments you wanted about the Wachovia agreement? Yes, yes, I do. And the Wachovia argument has to do not with delegation, but whether or not the court made its opinion in a one-size-fits-all kind of situation. There's no question that you have to look at unconscionability and illusoriness under the laws of each state. And the court did not do that in this situation. It relied primarily upon the Larson case from this court, one of our cases, that dealt with Washington and Ohio law, but it did not make the kind of state-by-state assessment that is required. And it's clear that a state-by-state assessment has to be done. And Larson actually underscores that because Larson made... How are the laws in the states different though? Well, there are four states, for example, where procedural or substantive violations, not violations, but procedural or substantive flaws are enough to set an arbitration agreement. Seven states, and we've named them in the brief, call out illusory contracts. And one of the illusory situations here is a situation where there are opt-out situations. I'm sorry, not opt-out, but the bank can change the agreement. Now, even if it says we're going to change the agreement with 30 days notice, it's still one-sided. So there are arguments. None of those were reached. And so our position is, is it on remand in the Wachovia situation? The court has to look at the different states and make a determination, not just basically invoke Larson or any of the other cases. There are four or five other states that have been decided. So you can't just invoke those states. There are 22 or 24 states that are covered in this situation that needed to be specifically addressed. And on the Wells Fargo, on the remand, if we were successful, then the court would have to make individual assessments in the Wells Fargo situation also. I know I've got three minutes on rebuttal and I'll save those three minutes. Thank you, counsel. We'll hear from Ms. Leonard. Thank you, your honor. May it please the court. My name is Sonia Winner. I represent Wells Fargo Bank. I'd like to start with the delegation issue. I think that this issue can be answered pretty readily really by looking at just two things. One is the contract itself, which is of course the most important thing. And the other is this court's decision in JPEG. Starting with the contract, it was interesting, Mr. Brokaw, on his argument about this being a consumer contract, he did not identify, for your honor, any case in which courts have distinguished between a commercial contract and a consumer contract in the context of respecting the incorporation of AAA rules and their rule on delegation. And in fact, numerous decisions of this court and other courts have applied rules in consumer cases. He referred, by the way, to the contract and he said that the contract incorporates AAA commercial rules, and then he said, and some supplemental rules. Well, those supplemental rules are the supplemental procedures for consumer-related disputes. So the fact that this was a consumer contract was explicitly recognized in the contract. But I think more important is the argument that he makes about the contract language itself. And he focuses in on one sentence of the contract, which again, he only tries to read in part. And that's the sentence that says, and I'm quoting it, a dispute also includes any agreement about the meaning of this arbitration agreement, whether this agreement is a dispute subject to binding arbitration provided for in this arbitration agreement. That sentence so says that a dispute that is the subject to arbitration includes a disagreement about the meaning of the arbitration agreement, and then whether a disagreement is subject to binding arbitration. He wants to truncate that second part and rewrite it as saying, whether a dispute, a disagreement is a dispute, period, end stop. But it actually says whether a disagreement is a dispute subject to binding arbitration. This language confirms that the arbitration includes the question, the gateway issues, whether disagreement between the customer and the bank is subject to binding arbitration. It's very similar to the language in the JPay case from the contract, which was a similar situation in which the contract provided both for the incorporation of AAA rules, which this court held was alone enough to evidence that the necessary intent to delegate. But it also had language that the ability to arbitrate the dispute claim or controversy shall likewise be determined in the arbitration. So similarly, it may have been a shorthand language in JPay as it was here, but that coupled with the incorporation of the AAA rules, this court found in JPay was more than sufficient to evidence the amount, the intent that's required to require delegation of gateway issues to the arbitrator. Importantly, the court in JPay did not say that every time the arbitration agreement incorporates AAA rules and also says something separate about delegation, that you then ignore the AAA rules and only look at the separate language. What it says is you read everything together and where there and here, that shows an intent to delegate that is enforceable. But the arbitration clause here is narrower than the AAA rules though, isn't it? I don't think it is narrower because what it says is that the not to arbitrate a disagreement as to whether something is subject to binding arbitration. That would include all the gateway issues. Is it subject to binding arbitration? And that would include issues such as enforceability or the other issues that the plaintiffs raise here. It's a gateway issue. It's similar to the language in JPay, which is that the arbitrator is going to decide whether this is something that has to be arbitrated. But if we determine that there is a disparity creating an ambiguity, hasn't the Supreme Court told us that the ambiguity has to be resolved against arbitrability? But there is no such ambiguity here. The fact that the plaintiff comes up with an argument about it does not create an ambiguity. And if you look at the full language of what the agreement actually says, we submit that it's clear. The other thing that I would say, and this is another very important point in JPay, is it says that the question about delegation of gateway issues is generally an all or nothing question. The court said at page 940 of the JPay decision, in the past we have held that the delegation of any gateway question entails the delegation of all such questions. Because the Supreme Court, and this is also in the opinion, the Supreme Court has looked for delegation of arbitrability in general, rather than for an intent to delegate precise questions of arbitrability. So unless there's something really clear in the contract that says we are not delegating X, an intent to delegate is construed to mean a delegation of all of gateway issues. The plaintiff's only argument is that it should be given a tortured construction reading only part of the language in the sentence, leaving out some words in the sentence that limits it to only some gateway issues. And neither the contract nor the case law would support that. Now, turning to the Wachovia issue, the argument about what the district court did below is, I think, a little interesting, because what the district court, to the extent the district court applied a one size fits all resolution of the other issues that were raised by the plaintiffs below, it's because that's the way the plaintiffs briefed it. The plaintiffs basically presented an argument that this is the answer, that this is unconscionable, the X, Y, and Z is unconscionable. They did not do a state by state analysis in their brief of that issue. And the district court specifically called that out in its decision at page 14, pointing out that the plaintiffs hadn't briefed these issues under the law of any state in a meaningful way. They did the same thing in the district court that they did in this court in their briefing here, which basically, yes, they had the state by state section of their brief, but all that did was cite sort of the basic cases that says what the standard for unconscionability is in that state. Most of those cases weren't even arbitration cases at all. They weren't cases that addressed the same kinds of issues. So just citing cases didn't do anything. And the plaintiffs didn't offer any analysis that said, yeah, okay, Georgia law said would resolve this issue one way, as this court has found in its prior decisions, but North Carolina would decide it differently, and this is why. There was no such analysis of that time by the plaintiffs below, and there's no analysis, frankly, of that in their brief. And it's telling, and the reason for that is because there isn't really differentiation among the laws of the various states that would allow this court's prior decisions on these unconscionability issues to be distinguished. Now, all of these issues have been raised time and again, not just in the Larson case. There's been a whole series of cases coming out of this MDL in which this court has gone through the plaintiff's stock list of unconscionability arguments, and those arguments have now all been rejected. Is your argument at this point that they waived the arguments or that they didn't make them because they're not available? Well, I would say both is probably true. They certainly waived it. It's not going to be over at this point and go back and try again and see if we can come up with something, which is basically what they're asking this court to do. But the fact is that there isn't anything out there, and let me give you, on the issue of illusory contracts, let me just give you an example of that. This contract, one of the states in which they say the illusory contract argument is available to them is the state of Maryland. Well, an appellate court in the state of Maryland has already looked at this exact Wachovia arbitration clause and has determined, this is in the Harvey case, has determined that that clause is not illusory, has explicitly rejected exactly the argument the plaintiffs make here about exactly this contract. They didn't discuss the Harvey case in their brief to the district court below. We did, but they didn't, and they didn't, interestingly, even though, of course, the district court did cite the Harvey case in its decision, it didn't just rely on, you know, Larson. There were a number of cases that the district court cited, including the Harvey case, and the plaintiffs did not address it in their brief here. They didn't even address it in their reply brief after we pointed out. You can't reach any conclusion about that other than, you know, the plaintiffs have no answer to that case. They did not address Harvey, and they did not identify any respect in which the Harvey decision is inconsistent with what a court in a different state would have come, would have arrived at because that state's law was different. Well, the Harvey case was a Maryland court of appeals case. Yes, it was. So, we would not be, I mean, we could find it persuasive, but we would not be bound by that decision. Well, you know what, I guess under the question of unconscionability, to the extent the Federal Arbitration Act doesn't preempt state law, state law is what would apply in determining the question of unconscionability, which is why Mr. Rogo is saying, well, we should have gone through every single state. And so state law would apply, and in a Washington appellate decision, it would certainly, you know, I would think be controlling on the question of Maryland law. So, you know, is the Harvey decision controlling on the issue of North Carolina law? No, but remember, the burden of demonstrating unconscionability lies with the party asserting it. So, it was the plaintiff's burden here to demonstrate that this contract was unenforceable on grounds of unconscionability. And so, if there's an argument that there's something special about North Carolina law that would make this contract unconscionable in a way, or illusory in a way it's not in Maryland, then it was their burden to come forward and explain that. And that they did not do. I can't recall, I can't recall from looking at the briefs, but did they, you said that they kind of noted the key cases for each of these states, is that correct? Yes, like, you know, if there's a case in a particular state that said, you know, in this state, the law of unconscionability is applied by looking at procedural unconscionability and substantive unconscionability and balancing that. So, there might be a case that said that. That's the kind of thing by and large that they cited. Okay, but nothing about your saying, and I'm sure Mr. Rogow will give his perspective, but you're saying nothing, and we can look at the briefs ourselves, but nothing about substantive unconscionability is established in this state by the following factors. And here's an example of how that played out in a similar case. You're saying that that's not what they did? That they didn't do that. They didn't do that. They didn't give the district court an analysis that said, here's the five factors in this state, and if you look at this contract under those five factors, you take them off and this is how it would come out. You know, the classic analysis one would do upon a particular state. I see my time is up, unless the court has other questions. All right, thank you, Ms. Swenor. Mr. Rogow, you deserve some time for rebuttal. Let me address Judge Grant's question. At pages 13 and 14 of Judge King's opinion, he makes it clear that his decision is based upon basically Larson and the cases from this court which had decided some of the state arbitration issues. And he writes, all of the arguments plaintiffs have presented on unconscionability have been rejected by this court and or the 11th circuit in other states in this MDL. All of these issues are matters of state law. He talks about plaintiffs have not asserted that the state laws that would apply here differ in any material aspect from those addressed in the prior decisions. And so what is clear from his decision is he was relying upon the prior decisions. And as we pointed out in our briefs, the prior decisions only cover a handful of states. I think four cases from this court that dealt with Georgia, North Carolina, South Carolina. What's your response to Ms. Swenor's argument that you all didn't offer a substantive briefing on the laws of the various states to the district? As I recall, Judge Grant, when we had gone through this before, we had addressed the individualized. I mean, Judge King has had this case for a long time and we did address these, but I don't want to hold myself to that because I don't recall exactly what we did. But it was not a situation in which we were saying to the judge, don't worry, there's nothing more to be said. What we were saying was, because the issue really was the delegation issue, and we were arguing that it was delegated. This was not even at that moment, something that he had to decide. The threshold issue he had to decide was whether or not this was all going to arbitration. And once it became clear that it was all going to arbitration, to get into these individualized assessments was a different kind of an approach, but it didn't have to be made then. We did not waive our right to raise these issues. The concept is when you get to the question of unconscionability or illusoriness, you have to look at the individual states. He never got to that. And that is the threshold issue that we have here. So to jump over that and say, well, it was never because here the horse is, does this present issues that must go to the court? And the answer is it does. And then the question will become, does the court look at the individual states? And here, if you read Judge King's opinion, it seems to me clear that he's saying it's already been decided. There's nothing new here. So he didn't do the individualized determination. And let me also talk about JPEG. In JPEG, first of all, the fact that it was the drafter of the agreement who was trying to avoid the consequences of the agreement, having the arbitrator determine whether or not a class action could be had in arbitration. And the agreed to arbitrate any and all such disputes, claims, and controversies. No question that that's the language there. But here, the language when it talks about disputes, it describes disputes in several ways. And this gets to my argument that it's confusing and therefore not an unmistakable kind of agreement. And the argument in the Wells Fargo statement, Wells Fargo, first of all, it does talk about whether a disagreement is a dispute subject to binding arbitration. I agree with Ms. Winner. It says what it says. But it also talks about, and early on in this section of the dispute, any dispute relating in any way to your accounts and services. And that's an important distinction here. This issue in the delegation issue is not an issue about accounts and services. Yes, it's the accounts and services that the consumer is complaining about. But the threshold issue is whether or not this arbitration agreement can be enforced against the consumer. And I know facing cases like Terminex, facing cases like JPAY poses a burden for a party in an arbitration situation. But I think here, when one looks at the multiple discussions, even the permissive aspect of the arbitration agreement in Wells Fargo, one cannot say with And so for those reasons, I think the decision below should be reversed and remanded to Judge King. Thank you, Mr. Rogow and Ms. Winner. We appreciate your arguments. Thank you.